John MORRIS and Florence Robin, for themselves, jointly and severally, and for all others similarly situated, Plaintiffs,

v.

Ben W. FORTSON, as Secretary of State of the State of Georgia, and his successor in such office, as such, Defendant.

Larry G. JUSTICE, Mrs. A. P. Beall, Mrs. Virginia Budd, Dr. Yancey F. Carter, Jr., Noble F. Collins, Glea Gray, Byran Hurst, Dr. Benjamin E. Mays, Carl Porter, Charles Sligh, Dr. Herbert Tyler, and Everett Williams, Plaintiffs,

v.

Ben W. FORTSON, Jr., Individually, and as Secretary of State of Georgia, Defendant.

Civ. A. Nos. 10533, 10546.

United States District Court
N. D. Georgia,
Atlanta Division.

Nov. 17, 1966.

See also, D.C., 261 F.Supp. 538.

Morris Brown, Charles Morgan, Jr., and M. Laughlin McDonald, Atlanta, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., Harold N. Hill, Jr., G. Ernest Tidwell, Coy R. Johnson, Asst. Attys. Gen., Gerald H. Cohen, Alexander Cocalis, Deputy Asst. Attys. Gen., for defendant in both actions.

Francis Shackelford, Randolph W. Thrower, Henry B. Troutman, Sr., Atlanta, Ga., Ed G. Barham, Valdosta, Ga., Emmet J. Bondurant, Atlanta, Ga., A. Rowland Dye, Augusta, Ga., Howell C. Erwin, Jr., Athens, Ga., B. C. Gardner, Jr., Albany, Ga., Howell Hollis, Columbus, Ga., Frank C. Jones, Macon, Ga., Dudley B. Magruder, Jr., Rome, Ga., H. Holcome Perry, Jr., Albany, Ga., for plaintiffs.

Before Circuit Judges ELBERT P. TUTTLE and GRIFFIN B. BELL and District Judge LEWIS R. MORGAN.

PER CURIAM.

The complaint in Morris, et al. v. Fortson is a class action seeking a declaratory judgment that Article V, Section I, Paragraph IV of the Constitution of Georgia, Ga.Code § 2–3004 conflicts with the Federal Constitution on two grounds. First, it is alleged that it would permit the malapportioned General Assembly of Georgia to elect a Governor of Georgia. Second, it is claimed that the election system set forth in that provision of the Georgia Constitution violates the Equal Protection Clause of the Fourteenth Amendment as interpreted by the Supreme Court in the "Georgia County Unit Case", Gray v. Sanders, 1963, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821, and particularly that portion of the decision which announces the "one person, one vote" principle as being required in state elections. The complaint in Justice, et al. v. Fortson rests on these same contentions and others which we do not reach. These cases were consolidated for hearing on the prayer in each for temporary relief.

A three-judge district court was convened in each case under 28 U.S.C.A. § 2281 et seq. Jurisdiction is conferred by 28 U.S.C.A. §§ 1343(3), 1331, 2201, and 42 U.S.C.A. § 1988. A justiciable controversy is presented within the meaning of Baker v. Carr, 1962, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, and its progeny including Gray v. Sanders, supra. Being of the view that Gray v. Sanders, supra, is controlling, a discussion of the allegations resting on malapportionment is also unnecessary.

The paragraph of the 1945 Georgia Constitution under attack provides as follows:

"The members of each branch of the General Assembly shall convene in the Representative Hall, and the President of the Senate and Speaker of the House of Representatives shall open and publish the returns in the presence and under the direction of the General Assembly; and the person having the majority of the whole number of votes, shall be declared duly elected Governor of this State; but, if no person shall have such majority, then from the two persons having the highest number of votes, who shall be in life, and shall not decline an election at the time appointed for the General Assembly to elect, the General Assembly shall immediately, elect a Governor viva voce; and in all cases of election of a Governor by the General Assembly, a majority of the mem-

bers present shall be necessary to a choice."

This Georgia constitutional provision came into being as an 1824 amendment to the Constitution of 1798. It thus long antedated the interpretation placed on the Equal Protection Clause of the Fourteenth Amendment in Gray v. Sanders, and even the Fourteenth Amendment itself. These cases bring into focus the question of gearing the Georgia Constitution to updated federal constitutional concepts.

■ The complaints allege that in the General Election of November 8, 1966, no candidate for Governor received a majority of the total vote cast.[1] The Court takes judicial cognizance of this public fact. It follows that the Georgia constitutional provision in question is applicable and that the Legislature, pursuant to that provision, is under the duty to select as Governor one of the two candidates receiving the highest number of votes in the election. The General Assembly is empowered under this provision to select either candidate, which means that they may select the candidate receiving the lesser number of votes.

■ The question presented is whether this election system is proscribed by the rationale of the Supreme Court in Gray v. Sanders, supra, as it related to the Equal Protection Clause of the Fourteenth Amendment. It is to be noted that the Georgia provision is patterned after the federal electoral college principle as it is embraced in the Twelfth Amendment to the Federal Constitution. But the Court pointed out in Gray v. Sanders, supra, that a state may not avoid equality in the vote by following the federal electoral system. More-

over, it makes it plain beyond peradventure that once the class of voters is selected, the vote of each voter is to be treated the same. Here Georgia has selected the class of voters in the election process for Governor. It is popular vote. The system was followed. More than 900,000 Georgia voters participated. The vote of each, according to Gray v. Sanders, supra, must be treated equally.

■ The Georgia election system in the constitutional provision now under consideration permits unequal treatment of the voters within the class of voters selected, and it thus cannot stand. Many arguments may be made, but we need go no further than to point out, as stated, that the candidate receiving the lesser number of votes may be elected by the General Assembly. This would give greater weight to the votes of those citizens who voted for this candidate and necessarily dilute the votes of those citizens who cast their ballots for the candidate receiving the greater number of votes. The will of the greater number may be ignored. In addition, each legislator would stand as a unit in selecting the Governor, and his vote would necessarily eliminate the will of his constituents who voted for the other candidate.

■ It is no answer to say that the General Assembly might select the candidate having the greater number of votes and thus no harm would be done. The fact that the system makes the other result possible is sufficient, by analogy with the ill-fated Georgia County Unit System, to make it subject to constitutional attack prior to its use. A fortiori, this system is contrary to the holding of the Supreme Court in Gray v. Sanders, supra, and our decision is controlled by that case.[2]

1. This contention is based on information and belief inasmuch as the Georgia Constitution, Art. V, Sec. I, Paragraph III, and the Georgia Election Code, § 34–1506, requires that the election returns in an election for Governor and certain other constitutional offices, be sealed and transmitted by the Secretary of State to the General Assembly for canvassing and

for the issuance of election certificates at the next session of the General Assembly.

2. The General Assembly of Georgia may have provided for this eventuality in adopting the Election Code of 1964. It there provided for run-off elections, including elections for the office of Governor, where no candidate receives a ma-

It might be contended that, after following the "one person, one vote" principle in the election for Governor, if a stalemate is reached in that no candidate has a majority of the vote, the people might provide for the selection of a Governor by a method which does not adhere to the "one person, one vote" principle. It can be argued that if the people approve of such deviation from the "one person, one vote" principle, their rights under the Equal Protection Clause are not violated. However, this contention is refuted by the Supreme Court's opinion in Lucas v. Forty-fourth General Assembly of the State of Colorado, 1964, 377 U.S. 713, 84 S.Ct. 1459, 1472, 12 L.Ed.2d 632, where the Court held that the fact that a challenged legislative apportionment plan was approved by a popular vote of the people is without significance if the plan adopted fails to satisfy the requirements of the Equal Protection Clause.

A declaratory judgment will be entered to the effect that so much of Article V, Section I, Paragraph IV of the Georgia Constitution which authorizes and requires the election of the Governor by

the General Assembly under the circumstances here presented is unconstitutional and void. The specific language declared unconstitutional and void is as follows:

"* * * but, if no person shall have such majority, then from the two persons having the highest number of votes, who shall be in life, and shall not decline an election at the time appointed for the General Assembly to elect, the General Assembly shall immediately, elect a Governor viva voce; and in all cases of election of a Governor by the General Assembly, a majority of the members present shall be necessary to a choice."

A judgment accordingly may be presented by counsel for plaintiffs, after notice to counsel for defendant, for entry. A stay will be granted for a period of ten (10) days after the entry of the order, within which time the defendant may seek an additional stay from the Supreme Court of the United States. The Court will retain jurisdiction for such other and further proceedings as may be deemed equitable and just.

jority vote in the election. Code Section 34–1514. We do not now consider the applicability of this run-off method to the contest between the two candidates for Governor who received the highest number of votes.